**Kelly  v.  Blasi**

*Fronefield Crawford,* for plaintiff.

*Robert F. Jackson* and *R. Winfield Baile,* for defendant.

TOAL, J., May 10, 1956.—This action has been initiated by a complaint in equity whereby plaintiff is endeavoring to have a sale of the premises known as 21 North 9th Street, Darby, for delinquent taxes by the treasurer of Delaware County, declared illegal and invalid for the reason that no notice of the sale was directed to plaintiff.

The complaint alleges that plaintiff is a practicing physician with offices at 20 North 9th Street, Darby, Delaware County, that defendant, C. J. Blasi, resides at 79 Ardmore Avenue, Lansdowne, Delaware County, that defendant, W. Ashton Mousley, resides at 209 Sharon Avenue, Collingdale, Delaware County, that plaintiff married Josephine B. Kelly, also known as Blanche M. Kelly, on March 23, 1942; that plaintiff purchased 21 North 9th Street, Darby, on March 23, 1942, from Eleanor Dick Fulweiler, Thomas B. Fulweiler and Hugh Lenox Hodge Dick, that title was placed in the name of Blanche M. Kelly without the knowledge or consent of plaintiff and the deed was recorded in the office for the recording of deeds in and for Delaware County, in Deed Book 1169, page 578, that on March 15, 1944, Blanche M. Kelly conveyed the said premises to Albert J. Crawford, Jr., by deed recorded in Deed Book 1257, page 441, the grantors in said deed being Blanche M. Kelly, wife of James J. Kelly, and James J. Kelly by his lawful attorney Blanche M. Kelly, in accordance with power of attorney recorded in the office for the recording of deeds in and for the County of Delaware, at Media, in Letters of Attorney

Book no. 82, page 368, that the said power of attorney did not authorize Blanche M. Kelly to sign, seal, acknowledge or deliver any deed as agent for plaintiff, that Albert J. Crawford, Jr., conveyed the said premises to James J. Kelly and Blanche M. Kelly, his wife, as tenants by the entireties on March 15, 1944, that Blanche M. Kelly for herself and as attorney in fact for plaintiff executed a deed to the said premises to Blanche M. Kelly which deed is recorded in Deed Book 1363, page 216; that the power of attorney used by Blanche M. Kelly in said conveyance did not authorize her to make, execute, acknowledge or deliver deeds of real estate as agent for plaintiff, that as of no. 1079, December term, 1949, in the Court of Common Pleas of Delaware County, plaintiff instituted an action in equity against Blanche M. Kelly praying that Blanche M. Kelly be declared trustee of the said premises and the said action was listed as lis pendens, that the real estate taxes assessed and levied against the said premises for the year 1950 remained unpaid and were returned to the office of the treasurer of Delaware County on or before May 1, 1951, that plaintiff had no personal notice of the return of said taxes to the county treasurer's office, that the treasurer of Delaware County sold the premises for nonpayment of 1950 taxes to defendant, C. J. Blasi, on October 8, 1952, that plaintiff had no personal knowledge of the sale of the premises by the county treasurer, that C. J. Blasi purchased the premises as agent of W. Ashton Mousley, that C. J. Blasi instituted an action to quiet title against Blanche M. Kelly and James J. Kelly in the Court of Common Pleas of Delaware County as of no. 377, December term, 1954, that plaintiff's complaint and amended complaint were returned by the sheriff as "not found" and service was thereafter made by publication, that defendant Blasi had knowledge of the

whereabouts of plaintiff, that no affidavit was filed in the action to quiet title, as to the efforts made to ascertain the whereabouts of the said plaintiff, that plaintiff never received any notice of the treasurer's sale, but had he known he would have redeemed the same within the redemption period, that the value of the premises is $20,000 and that plaintiff stands ready to reimburse defendants for the funds paid them in purchasing the premises at the treasurer's sale.

The answer of defendant, C. J. Blasi, admits the following: The identity of the parties involved, the fact that various conveyances were made and recorded as set forth in the complaint, that the equity action was listed as a "Lis Pendens" but avers that it was not listed against Blanche M. Kelly, that taxes were unpaid for 1950, that there was the tax sale, the action to quiet title, the sheriff's return as "not found", that no affidavit was filed in the quiet title action as to the efforts made to ascertain the whereabouts of plaintiff and that plaintiff was never sent notice of the treasurer's sale. The said answer denies that defendant, Blasi, was an agent for defendant, W. Ashton Mousley, and that defendant had personal knowledge of the whereabouts of plaintiff. To the rest of the averments of the complaint defendant, Blasi, answers either that he is without knowledge or information sufficient to form a belief as to the truth of the averments, or that the averment is a legal conclusion. Defendant, W. Ashton Mousley, has answered in the same manner as C. J. Blasi. The treasurer of Delaware County in his answer admits the identity of the parties, that the 1950 taxes against the premises were returned unpaid to his office, that the premises were sold to C. J. Blasi for the nonpayment of 1950 taxes and that plaintiff was never sent notice of the treasurer's sale. To all the other averments in plaintiff's complaint defendant treasurer answers that said averments are

unknown to him, are immaterial and are therefore not answered.

The answers of defendants C. J. Blasi and W. Ashton Mousley further aver as new matter that the return of the delinquent taxes for the year 1950 to the county treasurer were in the name of Blanche M. Kelly and adequately described the premises, that defendant, C. J. Blasi, paid 1952 taxes in the amount of $368.55, 1953 taxes in the amount of $387.42 and 1954 taxes in the amount of $393.75, that the taxes on the said premises were assessed in the name of Blanche M. Kelly for the years 1943 to 1949, inclusive, and that defendant, C. J. Blasi, has expended the sum of $1,200 in repairs and improvements to the premises. Therefore, defendants pray that the bill be dismissed.

Plaintiff in his reply admits all of the averments set forth in new matter with the exception of the sums expended for repairs and improvements. To this he pleads he has no knowledge or means of knowledge and therefore demands proof.

Hearings were held before the chancellor on June 6, 1955, and July 13, 1955. At the hearing on June 6, 1955, no evidence was presented to establish that C. J. Blasi was the agent of W. Ashton Mousley and upon a proper motion, a nonsuit was granted to defendant, W. Ashton Mousley. No exception was taken to this action nor has plaintiff argued that such a ruling was in error. . . .

### Discussion

In this case defendant, C. J. Blasi, purchased the premises 21 North 9th Street, Darby, for the delinquent 1950 taxes at a county treasurer's sale on October 8, 1952, and paid the sum of $372.25. Plaintiff by this equity action is now endeavoring to have the treasurer's sale set aside and the property reconveyed to him. He supports this endeavor by the contention

that he, the owner of the premises at the time of and prior to the sale, was never sent and never received the required notice of the sale for delinquent taxes.

The statute governing this sale was the Act of May 29, 1931, P. L. 280, sec. 7, which, as amended by section 3 of the Act of June 20, 1939, P. L. 498, 72 PS §5971*g*, reads as follows:

"The county treasurer shall advertise the fact of holding such sale, once a week for the three successive weeks prior to the holding of such sale, in at least two newspapers of general circulation in the county in which such seated land is located, if there be two newspapers so published; if there be only one, then in such newspaper so published in the county.

"Such advertisement shall set forth:

" (a)  The purpose of such sale.

" (b)  The time of such sale.

" (c)  The place of such sale.

" (d)  The terms of such sale.

" (e)  A list of the seated lands affected and their location, and the owner or reputed owner of each.

" (f)  Amount of taxes and interest.

"In addition to such advertisement, at least ten days before any such sale, written notice thereof shall be served by the county treasurer, by registered mail, upon the owner of such land, and if the whereabouts of the owner is unknown, such notice shall be served by registered mail upon the terre tenant, if any: Provided, however, That no such sale shall be prejudiced or defeated and no title to property sold at such sale shall be invalidated by proof that such written notice was not served by the treasurer, or that such notice was not received by the owner or terre tenant as herein provided.

"The cost of such advertisements, notices, and the service thereof shall be taxed as part of the cost of

such proceedings and shall be paid the same as the other costs."

It is quite obvious from the reading of this statute that a tax sale cannot be defeated nor title to the property invalidated because written notice was not served by the treasurer or that such notice was not received by the owner. If this clause were fully effective then the case could be decided in favor of defendant without further comment. However, the Supreme Court of Pennsylvania in Hess v. Westerwick, 366 Pa. 90, said the following, at page 96, with respect to this clause:

"We are of the opinion that this clause cannot be given the sweeping effect that its language seems to indicate for that would in effect strike out the very provisions for notice that the prior part of the section ordains."

The Supreme Court then points out that under due process of law a property owner always is entitled to receive some reasonable notice that his property is to be sold by process of law and states the following, at page 97:

"Had the legislature provided for no notice at all there is little doubt the Act would have been invalid as offending these fundamental provisions of both state and federal constitutions. Can it then by indirection do what it cannot do directly? Can it direct notice in one breath so to speak and in the next breath practically say it need not be given? To state the proposition is to answer it.

"The legislature seems itself to have recognized the absurdity of the proviso, for the Real Estate Tax Sale Law of 1947, P. L. 1368, (which expressly repeals the Act of 1931 and its amendments, in so far as they apply to taxing districts coming within the provisions of and operating under the 1947 Tax Sale Law),

modified this proviso so as to read: 'No sale shall be defeated and no title to property sold shall be invalidated because of proof that mail notice as herein required was not *received* by the owner.' This is not objectionable. Someone must take the risk of mail miscarriage rare as that may be, and that risk may fairly be placed on the delinquent taxpayer who has the duty of protecting his title against such defaults. Moreover the new Act adds a posting provision which in such circumstances is a reasonable method of apprising the owner of the property.

"It may be well to say a word also as to the responsibility of the taxing authorities' duty in the premises. The purpose of tax sales is not to strip the taxpayer of his property but to insure the collection of taxes. When therefore a property is to be sold, reasonable care requires the authorities to give adequate description and a reasonably definite location."

Hence it would appear that the law of Pennsylvania requires the county treasurer to send written notice of the tax sale, by registered mail, to the owner of the land at least 10 days before the sale. In this case the evidence is clear that the county treasurer did not send notice to James J. Kelly, plaintiff.

Therefore the chancellor must turn his attention to the following problem. Was James J. Kelly the owner of the premises as set forth in the act? If he was the owner, then was a reasonable method used to give him notice?

The last deed of record, which is dated July 30, 1946, and is recorded in Deed Book 1363 at page 216 in the Delaware County Recorder of Deeds Office, shows that Blanche M. Kelly, the wife of plaintiff, is the record owner. Furthermore, the deed registration records show that the property was last registered in the name of Blanche M. Kelly and the premises were

assessed for taxes in the name of Blanche M. Kelly from 1943 to 1950, inclusive. All of the records indicated that Blanche M. Kelly was the owner of the premises. The county treasurer, pursuant to requirements of notice set forth in the Act of May 29, 1931, P. L. 280, sec. 7, as amended by the Act of June 20, 1939, P. L. 498, sec. 3, 72 PS §5971*g*, served notice of the treasurer's sale to be held October 8, 1952, upon Blanche M. Kelly by registered mail on March 12, 1952. Advertisement of the sale was also made in accordance with the statute. Hence the requirements of the act were met.

Plaintiff, admitting this, contends, however, that the conveyance of July 30, 1946, whereby Blanche M. Kelly received title to the premises, was invalid because the power of attorney of her husband, James J. Kelly, plaintiff, under which she acted for her husband in the said conveyance, contained no authority to convey real estate.

A review of the said power of attorney reveals that this is the fact. Plaintiff contends that under the ruling of Gordon v. Harley, 165 Pa. Superior Ct. 433, the owner of real estate cannot have it taken away from him by the making of an assessment in the name of somebody whose title is entirely spurious, which assessment gives no notice that the true owner's property is being assessed.

But the assessment in this case was not made in the name of a person whose title was entirely spurious. Blanche M. Kelly in this case, even if the last conveyance be invalid, would still be a coöwner with plaintiff of the property and very much in the title.

Furthermore, taxes on the premises 21 North 9th Street, Darby, were never paid by plaintiff. They were paid by his wife, Blanche M. Kelly, and plaintiff was aware of this. He joined in a mortgage dated March

25, 1942, which recited that his wife, Blanche M. Kelly, was the owner of the premises. The premises were assessed in the name of Blanche M. Kelly from 1943 to 1950, inclusive. The premises became quite dilapidated and run down but plaintiff did nothing to abate this condition even though he maintained offices across the street. When he separated from his wife, he moved from the premises, and in 1950 instituted an action in equity against Josephine B. Kelly, his wife, to compel her to convey the said premises to him. Certainly these actions are not such as one would expect from an owner of a property.

Notice was sent to Blanche M. Kelly by the treasurer and there can be no doubt that she was one of the owners, if not the owner of the property at the time the notice was sent. Furthermore, plaintiff did nothing to correct the ownership records, if they were incorrect as he contends, even though he had notice of his wife's ownership as early as March 25, 1942, when he joined in the mortgage for the premises. Can he now complain that no notice was sent to him when he permitted such a condition to exist? Under the circumstances of this case, the chancellor is of the opinion that reasonable notice of the sale was given to the owner.

The facts set forth by plaintiff to show that title to the premises was not entirely in Blanche M. Kelly at the time of the tax sale, upon further investigation of the chain of title reveal that title was in Blanche M. Kelly. This chain shows that Thomas B. Fulweiler et al., conveyed the premises to Blanche M. Kelly by deed dated March 21, 1942. On March 15, 1944, Blanche M. Kelly and James J. Kelly by his lawful attorney Blanche M. Kelly, by deed conveyed the said premises to Albert J. Crawford, Jr. Blanche M. Kelly purportedly acted upon a power of attorney

dated September 18, 1943, from James J. Kelly. An inspection of the power of attorney recited in said deed as authority for Blanche M. Kelly acting for James J. Kelly discloses that Blanche M. Kelly was granted authority to collect debts only and nothing more. This power of attorney granted no power to convey real estate. Thereafter, by deed dated March 15, 1944, Albert J. Crawford, Jr., conveyed the premises to James J. Kelly, and Blanche M. Kelly, his wife, as tenants by the entireties.

On July 30, 1946, Blanche M. Kelly and James J. Kelly by his lawful attorney Blanche M. Kelly conveyed the premises to Blanche M. Kelly. Blanche M. Kelly again purportedly acted upon the power of attorney dated September 18, 1943, from James J. Kelly which contained no authority to convey real estate. At the time of the conveyance to Crawford, the Act of May 17, 1945, P. L. 625, secs. 1 and 2, 48 PS §32, was in effect. It read as follows:

"Section 1. . . . hereafter a married woman shall have the same right and power as a married man to acquire, own, possess, control, use, lease, mortgage, sell, or otherwise dispose of any property of any kind, real, personal or mixed, and either in possession or expectancy, and may exercise the said right and power in the same manner and to the same extent as a married man.

"Section 2. Hereafter a married woman may, in the same manner and to the same extent as an unmarried person, make any contract in writing, or otherwise, but she may not execute or acknowledge a deed, or other written instrument, conveying her real property, unless her husband join in such conveyance."

In the conveyance to Crawford, the attempt was made to join the husband by the use of a power of attorney from the husband to the wife, Blanche M.

Kelly. However, the said power of attorney gave no such power to the wife, and the deed to Crawford, therefore, was executed by the wife alone. Therefore, under the above cited statute, the deed to Crawford was void. During coverture nothing short of a new deed in which the husband joined could correct the situation. After the disability of coverture has been removed, a ratification of the conveyance previously made during coverture, can make the said conveyance valid: Haines Trust, 356 Pa. 10; Simon's Estate, 20 Pa. Superior Ct. 450. However, there is no evidence of a ratification in this case after the disability of coverture was removed. Nor is there even any evidence to show that the disability of coverture was removed. Therefore, Blanche M. Kelly was the sole owner of the premises 21 North 9th Street, Darby, and had been since the conveyance from Thomas B. Fulweiler et al., on March 21, 1942, until the treasurer's sale on October 8, 1952. In these circumstances the chancellor finds that the treasurer's sale was valid and that the complaint of James J. Kelly must be dismissed.

Since plaintiff did not pursue his contention that the decree quieting title on the said premises be set aside, the same must be considered abandoned. Therefore, the chancellor will not discuss the same.

### Conclusions of Law

1. The Delaware County treasurer's sale of the premises 21 North 9th Street, Darby, on October 8, 1952, for 1950 taxes to C. J. Blasi was legal and valid.

2. Notice of the said treasurer's sale was given as required by the Act of May 29, 1931, P. L. 280, sec. 7, as amended by the Act of June 20, 1939, P. L. 498, sec. 3.

3. The court has jurisdiction of the parties and the subject matter of this case.

*Decree Nisi*

And now, to wit, May 10, 1956, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

1. That the complaint in equity filed by plaintiff James J. Kelly be and the same is hereby dismissed.

2. That plaintiff shall pay the costs.

3. That an exception is hereby granted to plaintiff.

*Order*

The prothonotary is directed to give notice immediately to the parties or their attorneys of record of the filing of the above decree nisi and, if no exceptions be filed thereto within 20 days after service of such notice, to enter the decree nisi as a final decree.